UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENT LAVOIE,

      Plaintiff,

v.                                                                    Case No.   2:20-cv-756-JLB-NPM

ARTISTS RIGHTS ENFORCEMENT
CORPORATION,

      Defendant.

_____

## **O R D E R**

Plaintiff Kent LaVoie—better known by the stage name "Lobo"— is a singer-songwriter who became popular in the 1970s.[1]  In 1983, Mr. LaVoie executed a contract with Artists Rights Enforcement Corporation ("AREC").  (Doc. 3, Ex. A.)  The contract allowed AREC to act on Mr. LaVoie's behalf by collecting royalties from third parties who sold phonograph records and cassettes of his music.  In exchange for enforcing Mr. LaVoie's rights, AREC took a fifty percent cut of all the royalties that it helped him obtain.

At some point, Mr. LaVoie grew dissatisfied with the contract and informed AREC that he was terminating it.  (Doc. 3 at ¶ 19.)  AREC responded by telling Mr. LaVoie that the contract was not terminable at will and threatening to take legal action against him.  (Id. at ¶¶ 18, 20.)  Rather than wait, Mr. LaVoie sued AREC in

---

[1] Among his better-known songs are Me and You and a Dog Named Boo (Big Tree Records 1971), I'd Love You to Want Me (Big Tree Records 1972), and Don't Expect Me to Be Your Friend (Big Tree Records 1972).

Florida state court for: (1) declaratory relief; (2) breach of contract; and (3) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–.213. (Doc. 3.) AREC removed the case to this Court on the basis of diversity jurisdiction and now moves to either dismiss Mr. LaVoie's amended complaint due to lack of personal jurisdiction or transfer venue to the Southern District of New York. (Docs. 1, 8.) Mr. LaVoie naturally opposes the motion.

After careful review, the Court agrees with AREC that it lacks personal jurisdiction. Accordingly, AREC's motion to dismiss is **GRANTED** and Mr. LaVoie's claims are **DISMISSED WITHOUT PREJUDICE** to him re-filing in a forum where personal jurisdiction exists.

### DISCUSSION[2]

When a federal court sits in diversity, its exercise of personal jurisdiction must be proper under both: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). The reach of Florida's long-arm statute is a question of state law, and the Court must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. See Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11th Cir. 2013). But if the Florida Supreme Court is silent and Florida's District Courts of Appeal are split, this Court

---

[2] A plaintiff bears the initial burden of pleading facts sufficient for a prima facie case of personal jurisdiction. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The Court must accept the allegations in the complaint as true unless controverted by evidence. Id. If the parties' evidence conflicts, the court must construe all reasonable inferences in favor of the plaintiff. Id.

may defer to the Eleventh Circuit's view.  See RG Golf Warehouse, Inc. v. Golf Warehouse, Inc., 362 F. Supp. 3d 1226, 1237 (M.D. Fla. 2019).

Due process requires a non-resident defendant to have "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted).  In giving content to International Shoe, the Supreme Court has distinguished between two categories of personal jurisdiction: specific and general.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011).

The parties do not dispute that the Court lacks general jurisdiction over AREC.  Accordingly, the Court's analysis will proceed in two parts.  First, the Court will analyze whether any of AREC's actions are covered by Florida's long-arm statute.  If they are, then the Court will analyze whether AREC has sufficient "minimum contacts" with Florida for the Court to exercise specific jurisdiction under the Fourteenth Amendment's Due Process Clause.

## I.      Florida Long-Arm Statute.

Florida's long-arm statute extends to those who: (1) commit a "tortious act within [Florida]", or (2) breach a contract in Florida "by failing to perform acts required by the contract to be performed in [Florida]."  Fla. Stat. § 48.193(1)(a)(2), (a)(7).  Mr. LaVoie argues that one of these two provisions applies to AREC.

The Court begins with the breach-of-contract provision.  § 48.193(1)(a)(7). Mr. LaVoie alleges that AREC breached the underlying contract "by failing to honor

[his] termination and insisting that [he] continue to allow them to receive, account for, and distribute royalty payments in return for a 50% fee." (Doc. 3 at ¶ 32.) "[A] breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." 23 Richard A. Lord, Williston on Contracts § 63:1 (4th ed.), Westlaw (database updated Nov. 2020); see also Allapattah Servs., Inc. v. Exxon Corp., 61 F. Supp. 2d 1308, 1325 (S.D. Fla. 1999).

Mr. LaVoie does not allege that AREC failed to perform a promise under the contract. His breach-of-contract claim is based solely on the parties' disagreement about whether the contract is terminable at will. Refusal to accept an at-will termination is not a "breach" of the contract—it is "merely a dispute regarding the interpretation of the contract." See Carolina Rest. Grp., Inc. v. Pepsico Sales, Inc., No. 3:14-cv-668, 2015 WL 4250395, at *4 (W.D.N.C. July 13, 2015) (dismissing a breach-of-contract claim against Pepsi based on its refusal to recognize a "Permitted Termination" by the plaintiff). Accordingly, Mr. LaVoie's claims do not fall under section 47.193(1)(a)(7) of Florida's long-arm statute.

Mr. LaVoie also alleges that AREC is subject to Florida's long-arm statute because it committed a "tortious act" within Florida by violating FDUTPA. (Doc. 3 at ¶¶ 36–40.) The factual basis for Mr. LaVoie's FDUTPA claim is the same as the one for his breach-of-contract claim—AREC's refusal to recognize his termination of the contract. (Id.) This refusal, according to Mr. LaVoie, is an "unconscionable act[] or practice[]" under FDUTPA because it would result in a "perpetual 'forever' contract." (Doc. 3 at ¶¶ 18, 39.)

In the face of a longstanding conflict among Florida's District Courts of Appeal, the Eleventh Circuit has held that the "tortious act" provision of Florida's long-arm statute applies to "defendants committing tortious acts outside the state that <u>cause injury</u> in Florida." <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1217 (11th Cir. 1999) (emphasis added). Moreover, the Florida Supreme Court recognizes violations of FDUTPA as "tortious acts." <u>See</u> <u>Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.</u>, 752 So. 2d 582, 585 & n.8 (Fla. 2000).

A "forever contract" is not always unconscionable. <u>Williston on Contracts</u>, <u>supra</u>, § 4:22 ("It is uncommon, although not unheard of, for a promise, properly interpreted, to call for a perpetual performance.") But it could be, depending on the contract's terms and the manner in which it was entered. <u>Basulto v. Hialeah Auto.</u>, 141 So. 3d 1145, 1157 (Fla. 2014) (describing "procedural unconscionability" and "substantive unconscionability" under Florida law). Based on the allegations in the amended complaint, the Court is not prepared to conclude that the contract in this case cannot possibly be unconscionable. And if it is indeed unconscionable, the resultant injury would be in Florida because that is where Mr. LaVoie resides.

Accordingly, for purposes of personal jurisdiction, the Court holds that personal jurisdiction is proper in this case under the long-arm statute.

## II.     Specific Jurisdiction.

For a court to have specific personal jurisdiction, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.</u>,

141 S. Ct. 1017, 1024–25 (2021) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Id. at 1025 (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)). "They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Id. (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). Moreover, the plaintiff's claims must "'must arise out of or relate to the defendant's contacts' with the forum." Id. (quoting Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 137 S. Ct. 1773, 1780 (2017)).

Mr. LaVoie argues that AREC had sufficient contacts with Florida for specific jurisdiction because his royalty payments under the contract "were . . . due to be made in Florida." (Doc. 18 at 8–9.) Mr. LaVoie also cites an e-mail from AREC's counsel which provides that AREC has twenty other clients who receive royalty payments in Florida.[3] (Doc. 18-1.) The Eleventh Circuit has held, however, that "[t]he . . . mailing of payments to the forum state" does not "weigh heavily" on specific jurisdiction. Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 994 (11th Cir. 1986) (citing Hydrokinetics, Inc. v. Alaska Mech., Inc., 700 F.2d 1026, 1029 (5th Cir. 1983)); cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) (finding specific jurisdiction in a case where a franchisee was required to make payments to franchisor in Florida but also had numerous other contacts with

---

[3] AREC's CEO provides that four of those clients lived in Florida when they originally contracted with AREC, and those four clients represent "less than one percent of [AREC's] client base." (Doc. 23-1 at ¶ 6.)

the state amounting to "a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts . . . in Florida").[4]  Accordingly, the Court cannot find that AREC's mailing of royalty checks to Florida—even to some customers besides Mr. LaVoie—is enough to create specific jurisdiction.

Paragraph 10 of the amended complaint further provides that the contract "was prepared by [AREC] and forwarded to [Mr. LaVoie] in Florida, where the contract was signed."  (Doc. 3 at ¶10.)  Reaching out to Florida and deliberately negotiating with a Florida resident may be relevant to a determination of specific jurisdiction.  See Rudzewicz, 471 U.S. at 479–80 ("Rudzewicz deliberately 'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." (citation omitted)).  That said, Mr. LaVoie's allegation is contradicted by documentary evidence, which shows that he lived in Tennessee when the contract was being negotiated.  (Doc. 23-1, Ex. A.)  Moreover, AREC's CEO has provided the Court with a sworn (and uncontroverted) declaration that Mr. LaVoie was paid "for quite a few years at his residences . . . in Tennessee and North Carolina" before he relocated to Florida.  (Id., ¶ 4.)  Based on this uncontroverted evidence, AREC did not deliberately reach out to Florida in order to

---

[4] Even in cases where the Eleventh Circuit has considered the place of payment as a fact relevant to personal jurisdiction, there were numerous other facts to establish minimum contacts.  Cf. Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 934 (11th Cir. 2007) (citing place of payment as a factor in its analysis of fair play and justice after minimum contacts had already been established through other relevant facts).  Here, Mr. LaVoie relies exclusively on the fact that AREC mails royalty checks to Florida (both to him and to some other clients).

negotiate Mr. LaVoie's contract—all it did was mail Mr. LaVoie's checks to Florida after he moved there.

No other facts support this Court's exercise of specific jurisdiction. AREC is a New York corporation that has no presence in Florida—no property, no employees, and no bank accounts. (Doc. 9 at ¶ 7.) The royalties AREC collects on behalf of its clients are not from any record company or music publisher in Florida. (Doc. 23-1 at ¶ 5.) Essentially, the only connection between AREC and Florida for purposes of this case is the fact that Mr. LaVoie now lives in Florida. In the Supreme Court's view, that is not enough to support specific jurisdiction. Walden, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

In sum, the Court holds that it does not have personal jurisdiction over AREC because AREC lacks minimum contacts with the state of Florida under International Shoe and its progeny. Therefore, the Court grants AREC's motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

For the reasons above, AREC's motion to dismiss (Doc. 8) is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE** to Mr. LaVoie to bring this case in a forum with personal jurisdiction over AREC. The Clerk is **DIRECTED** to terminate all pending deadlines and close this case.

**ORDERED** in Fort Myers, Florida, on April 29, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE